# Exhibit A

John S. Letchinger *(Pro Hac Vice)*
*jletchinger@bakerlaw.com*
**BAKER & HOSTETLER LLP**
One North Wacker Drive, Suite 4500
Chicago, IL 60606-2841
Telephone: 312.416.6206
Facsimile: 312.416.6260

Jared A. Brandyberry *(Pro Hac Vice)*
*jbrandyberry@bakerlaw.com*
**BAKER & HOSTETLER LLP**
1801 California Street, Suite 4400
Denver, CO 80202-2658
Telephone: 303.764.4072
Facsimile: 303.861.7805

David H. Stern (SBN 196408)
*dstern@bakerlaw.com*
Dyanne J. Cho (SBN 306190)
*dcho@bakerlaw.com*
**BAKER & HOSTETLER LLP**
11601 Wilshire Boulevard, Suite 1400
Los Angeles, CA 90025-0509
Telephone: 310.820.8800
Facsimile: 310.820.8859

*Attorneys for Defendant*
THE VAIL CORPORATION

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

**IN THE UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

ASSOCIATED PRODUCTION MUSIC, LLC, a New York limited liability company,

Plaintiff,

v.

THE VAIL CORPORATION, a Colorado corporation; and DOES 1-10, inclusive,

Defendants.

Case No.: 2:21-cv-04799 SB (Ex)

**DEFENDANT THE VAIL CORPORATION'S [PROPOSED] FINDINGS OF FACT AND CONCLUSIONS OF LAW**

Action Filed: June 11, 2021

L.R. 16-2 Conference: Sept. 22, 2022

Final Pretrial Conference: Nov. 4, 2022 at 10:00 a.m.

Trial Date: Nov. 21, 2022
Time: 8:30 a.m.
Courtroom: 6C

**COURT TRIAL**

Pursuant to the Pretrial and Trial Order at Paragraph 1.b.ii. (Dkt. No. 19) and the Case Management Schedule (Dkt. No. 27, as modified by Dkt. No. 38), The Vail Corporation ("Vail") in its defense of Associated Production Music LLC's ("APM") copyright infringement claim provides the following proposed findings of fact and conclusions of law:

## PROPOSED FINDINGS OF FACT

### I. NATURE OF THE ACTION

1. This is an action for copyright infringement in connection with 49 sound recordings listed on Exhibit 1 to the Complaint (the "Recordings"). *See* Dkt. No. 28.

2. APM alleges that Vail has infringed copyrights in the Recordings by using the Recordings in 119 videos posted between 2008-2020 to certain social media pages (YouTube, Instagram, Facebook) associated with ski resorts ultimately purchased by Vail as listed on Exhibit 2 to the Complaint (the "Videos"). *Id.*

3. APM alleges that the Recordings used in the Videos come from a total of 41 different registrations (the "Registrations") (i.e., some of the Recordings have the same registration number as shown on Exhibit 2 to the Complaint). *Id.*

4. In the first cause of action, APM alleges direct infringement of copyrights associated with the Recordings—i.e., APM alleges that without APM's authorization, license, or consent, Vail reproduced, distributed, and/or publicly performed the Recordings as part of the Videos, thereby infringing APM's claimed exclusive rights of copyright to the Recordings under the Copyright Act.

5. In the second cause of action APM alleges contributory infringement of copyrights associated with the Recordings—i.e., APM alleges Vail knowingly and systematically induced, caused, materially contributed to and participated in infringing distribution by third parties of the Recordings, including, without limitation, by way of reproduction, distribution, and/or public performance through the YouTube platform by licensing to YouTube the right to reproduce, distribute,

and/or publicly perform the Videos, Vail induced and encouraged YouTube to directly infringe Plaintiff's Copyrights.

**II. Plaintiff**

6. Plaintiff APM is a New York limited liability company with its principal place of business located in Hollywood, California.

7. APM is one of many production music companies that licenses sound recordings to customers for use in film, television, radio, and other media in North America.

**III. Defendant**

8. Defendant Vail is a corporation organized under the laws of Colorado, with its principal place of business in Broomfield, CO.

9. Vail operates 41 destination mountain resorts and regional ski areas.

**IV. APM has Not Demonstrated Ownership of the Asserted Works**

10. APM does not claim to be the author, creator, or initial owner of the copyrights at issue.

11. APM is not the owner of the copyright registrations at issue in this action.

12. APM has not presented certificates of registration for the asserted Recordings.

13. APM claims that certain sub-publishing agreements and amendments make APM the exclusive licensee of the copyrights at issue.

14. The sub-publishing agreements do not identify the Recordings (i.e., there are no song titles, artist names, album titles, etc. identified in the agreements) or any registrations allegedly associated with the Recordings.

15. The sub-publishing Agreements indicate that songs will be identified and possibly added in the future, with some specifically explaining that a "Schedule A appended hereto contains a complete and accurate list of" the musical compositions

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

covered by the agreements. (*See* e.g., Exhibit 272 at APM00000026, §§ 1.1 & 8.1.5.)

16. None of the Schedule A's, however, identify the Recordings. (*See* Exhibit 272 at APM00000041, APM00000054, APM00000071; Exhibit 277 at APM00000176, APM00000194, APM00000209; Exhibit 279 at APM00000242.)

17. None of the amendments to the sub-publishing agreements identify the Recordings. (*See* Exhibit 272 at APM00000055-58; Exhibit 273 at APM00000096-101; Exhibit 275 at APM00000139-150; Exhibit 276 at APM00000161-162; Exhibit 278 at APM00000224-227; and Exhibit 280 at APM00000332-334.)

18. As confirmed by APM's 30(b)(5) witness, APM does not rely on anything beyond the sub-publishing agreements and amendments as conveying the requisite "exclusive rights" to demonstrate APM's ownership of the copyrights in the Recordings.

19. There is no evidence linking any Recording to the various license agreements produced by APM; and, APM has confirmed that it has no additional documents to establish any rights in or to the accused works.

**V. Vail's Liability and Damages are Limited under 17 U.S.C. § 507(b)**

20. All but two accused unauthorized uses of Recordings in a single Video (i.e., a single Video was uploaded that contained two separate Recordings) were uploaded to a social media site more than three years prior to APM filing a complaint alleging infringement of the identified Recordings.

21. 53 accused unauthorized uses of Recordings were in Videos uploaded in 2008 (i.e., well over 10+ years before APM filed its Original Complaint on June 21, 2021 or its First Amended complaint on April 14, 2022); two accused unauthorized uses of Recordings were in Videos uploaded in 2010, four accused unauthorized uses of Recordings were in Videos uploaded in 2011, 45 accused unauthorized uses of Recordings were in Videos uploaded in 2012, one accused unauthorized uses of Recordings were in Videos uploaded in 2013, two accused

unauthorized uses of Recordings were in Videos uploaded in 2014, three accused unauthorized uses of Recordings were in Videos uploaded in 2016, four accused unauthorized uses of Recordings were in Videos uploaded in 2017, three accused unauthorized uses of Recordings were in Videos uploaded in 2018, and two accused unauthorized uses of Recordings were in Videos uploaded in 2019.

22. In 2007, TuneStat began monitoring unauthorized use of sound recordings in cable channels. Exhibit 40.

23. At least by 2010, TuneStat was offering the same service for website monitoring. Exhibit 41.

24. In 2019, TuneStat contacted APM about beginning to monitor the APM portfolio (remarkably, consistent with its history of doing nothing to actively police its works, APM did not even initiate the TuneStat relationship). *See* Deposition of Chad Elbert, APM 30(b)(6) representative, at 7:25-8:18; 9:4-19; 10:17-11:20.

25. APM did not engage TuneStat to monitor APM's production music portfolio until 2020. *Id*.

26. APM was aware of and previously solicited by other vendors offering a similar service as TuneStat. *Id.*

27. Prior to TuneStat reaching out to APM, APM did not utilize a software service to monitor uses of its production music portfolio on social media sites prior to 2020. *Id.*

28. Vail's current licensing practices demonstrate respect for intellectual property rights (e.g., Vail has licenses with APM; Vail has not previously been sued for infringement).

29. Had APM diligently monitored its portfolio (e.g., by using TuneStat or a similar company) and had APM contacted Vail years ago, then Vail would have been able to locate and produce licenses to demonstrate proper rights to use the accused Recordings.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

## VI. Amount of Statutory Damages

30. The evidence at trial will demonstrate that Vail was unaware of any infringements alleged by APM before APM contacted Vail regarding the alleged unauthorized use of the Recordings in the Videos.

31. Furthermore, the evidence shows that Vail promptly disabled access to the allegedly infringing videos and any delay in disabling access to the videos was a result of 1. the length of time since the video was posted, which for some was nearly twelve years ago, and 2. the difficulty in locating the videos on the Facebook, YouTube, and Instagram platforms and the credentials required to even login to accounts created by long-departed employees.

32. Evidence shows that Vail had no reason to believe that its actions constituted copyright infringement when the videos were posted or when Vail acquired individual resorts and their corresponding social media sites at the time of its acquisition of the corresponding resorts.

33. This action involves production music used in videos posted to social media sites related to different ski properties now owned by Vail.

34. The videos were not promoted or paid media and were informational in nature.

35. The vast majority of the videos were posted well over a decade ago by individual resorts (in many instances, well before Vail owned the individual resorts) and have seen virtually no view counts in recent years.

36. Due to APM's delay in bringing suit, Vail has not been able to produce licenses related to the asserted works (other than as selectively produced by APM).

37. Given the obscure nature of the production music involved, it appears that a third-party production company previously secured rights to the asserted Recordings, and now APM seeks to exploit Vail's lack of records from 12+ years ago.

38. The evidence shows that, for similar production music, Vail selects works based on categorical descriptions and places no value on specific songs or artists.

39. Vail has an extensive history of licensing music and other works.

40. As it relates to production music for current projects (and, since 2017), Vail uses a portfolio license that costs $26.75 per song per year.

41. Based on Vail's current production music licensing practices and other available information regarding competitive production music licensing rates, the evidence shows that APM's actual damages are at most $333.80 per Recording (using the 2008 date for each), which amounts to $16,356 in total for the 49 Recordings asserted by APM.

42. Similar companies (e.g., Soundstrip and 5 Alarm) charge less on a per Recording or use or portfolio basis.

43. APM did not have evidence of a single asserted Recording that was licensed at a rate higher than $750.

44. APM did not have evidence of a single asserted Recording that was licensed at APM's rate card rate for non-paid media.

45. APM's revenue summary (i.e., Exhibit 29 at APM00000634) shows that, in total, the asserted Recordings generated $156,236 in license revenue based on needledrop licenses granted by APM since 2003, that is counting every dollar generated for licensing the Recordings on a per song basis.

46. APM's revenue summary (i.e., Exhibit 29 at APM00000634) shows that the Recordings were not licensed at the rates shown on APM's rate card.

47. APM's CFO admitted that the production music industry is a very competitive field and APM's rate card (e.g., Exhibit 285 at APM00000249 (2018 Rate Card with $400/yr rate for non-paid media use); Exhibit 287 at APM00000616 (2022 Rate Card with $225/yr rate for non-paid media use) is merely a starting point

to negotiate rates for licenses to APM's production music, such as the Recordings. Deposition of Chad Elbert, (APM 30(b)(6) representative) at 84:4-7 and 85:11-13.

48. In its pleadings and in discovery, APM never disclosed that it would pursue statutory damages for both a sound recording copyright and a musical composition copyright and instead APM's pleadings only reference sound recordings. *See* Dkt. No. 1 and 28.

49. Moreover, the undisputed evidence is that licenses allegedly covering the accused uses of the Recording (and uses of the subject production music) never include a separate payment for musical composition.

50. The evidence shows, that APM's licenses, Vail's licenses, and licenses issued throughout the entire competitive production music industry do not account for separate sound recording and musical composition copyrights subject to licensing fees.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

## PROPOSED CONCLUSIONS OF LAW

### I. APM has not Demonstrated Ownership of the Asserted Works

51. "To establish infringement, two elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publications v. Rural Telephone Service Co.*, 499 U.S. 340, 361 (1991).

52. Under the Copyright Act, the party claiming infringement must prove ownership. *See Lamps Plus, Inc. v. Seattle Lighting Fixture Co.*, 345 F.3d 1140, 1144 (9th Cir. 2003) ("Ownership of the copyright is ... always a threshold question." (quoting *Topolos v. Caldewey*, 698 F.2d 991, 994 (9th Cir. 1983))).

53. APM bears the burden of proving copyright ownership. *Fleisher Studios, Inc. v. A.V.E.L.A., Inc.*, 654 F.3d 958, 962 (9th Cir. 2011).

54. A plaintiff can prove ownership through a valid registration from the United States Copyright Office covering the relevant copyright. *See* 17 U.S.C. § 411; *see also* 17 U.S.C. § 501; *Fourth Est. Pub. Benefit Corp. v. Wall-Street.com, LLC*, 139 S.Ct. 881, 887 (2019).

55. If APM is not the owner of a valid registration, APM has standing to bring suit if it proves that the copyright owner has conveyed to APM in writing the "exclusive rights to do and to authorize" others "to reproduce the work, to prepare derivative works based upon the work, to distribute copies of the work, to perform the work publicly, to display the work publicly, and to record and perform the work by means of an audio transmission." *Minden Pictures, Inc. v. John Wiley & Sons, Inc.*, 795 F.3d 997, 1002 (9th Cir. 2015) (citing 17 U.S.C. § 106).

56. APM has not met its burden because it has not established that it is the owner of a valid registration covering the Recordings or that it has exclusive rights over the Recordings.

57. Accordingly, APM has not met its burden to show standing to bring this action and cannot meet its burden to demonstrate infringement, whether direct or contributory infringement, of the Recordings by Vail.[1]

**II. Vail's Liability and Damages are Limited under 17 U.S.C. § 507(b)**

58. Under the Copyright Act, "[n]o civil action shall be maintained under the provisions of this title unless it is commenced within three years after the claim accrued." 17 U.S.C. § 507(b).

59. The Ninth Circuit applies the discovery rule and holds that a claim accrues when APM discovered or reasonably could have discovered the infringement. *Polar Bear Prods., Inc. v. Timex Corp.*, 384 F.3d 700, 706 (9th Cir.

[1] Vail previously raised similar arguments in a Federal Rule of Civil Procedure 12(c) for judgment on the pleadings. Dkt. No. 31. Vail respectfully acknowledges that the previous motion was stricken by the Court as untimely under Your Honor's scheduling order. Dkt. No. 35. Pursuant to LR 16.2-1 Vail raised APM's lack of standing once again during the conference of counsel on September 16, 2022.



BAKER & HOSTETLER LLP ATTORNEYS AT LAW LOS ANGELES

2004).

60. Since APM claims not to have discovered the infringement within the three-year statute of limitation, it can only recover for acts by Vail if it establishes that it reasonably could not have discovered the infringement more than three years before filing suit; otherwise, damages are barred. *Id.*

61. But if APM establishes that it reasonably could not have known of Vail's Videos more than three years prior to filing suit, then under Ninth Circuit law the discovery rule is an exception to the Copyright Act's three-year damages limitation. *Starz Entm't., LLC v. MGM Domestic Television Dist., LLC*, 2022 WL 2733507, *7-9 (9th Cir. July 14, 2022).

62. Based on the existence of the TuneStat technology since 2010 and availability of similar technology, APM reasonably could have known of the Videos posted before 2019. Moreover, APM's lack of any policing of its works prior to hiring TuneStat is not reasonable given APM's sole function as a licensing company.

63. Accordingly, APM is barred from recovering damages for unauthorized uses of Recordings in Videos uploaded more than three years prior to that Video being listed in either the June 21, 2021 Original Complaint or the April 14, 2022 First Amended Complaint.

**III. Amount of Statutory Damages**

64. Under 17 U.S.C. § 504(c)(1), the plaintiff may elect to seek statutory damages 17 U.S.C. § 504(c)(1); *see also Derek Andrew, Inc. v. Poof Apparel Corp.*, 528 F.3d 696, 699 (9th Cir. 2008). APM has confirmed that it is electing statutory damages.

65. If the copyright owner elects to recover statutory damages, as APM has done here, the owner cannot also recover actual damages. 17 U.S.C. § 504(c); *Derek Andrew*, 528 F.3d at 699; *Nintendo of Am., Inc. v. Dragon Pac. Int'l*, 40 F.3d 1007, 1010-11 (9th Cir. 1994).

66. If it proves infringement, then the Copyright Act permits APM to recover statutory damages "not less than $750 or more than $30,000 as the court considers just." 17 U.S.C. § 504(c)(1).

67. Statutory damages are awarded for each infringed copyrighted "work." 17 U.S.C. § 504(c)(1).

68. Furthermore, when determining the number of works, Courts have looked at other factors that also favor a single award: whether the works each have independent economic value (*see, for example, VHT, Inc. v. Zillow Group, Inc*., 918 F.3d 723, 747 (9th Cir. 2019); *Sullivan v. Flora, Inc*., 936 F.3d 562, 567 (7th Cir. 2019)), whether the copyright owner has marketed the works individually or as a whole (*Bryant v. Media Right Prods., Inc*., 603 F.3d 135, 141 (2d Cir. 2010)), and whether the copyright owner registered the works as a compilation or individually (*Yellow Pages Photos, Inc. v. Ziplocal, LP*, 795 F.3d 1255, 1277-78 (11th Cir. 2015)).

69. "[F]or the purpose of computing statutory damages, the relevant unit is not the number of infringements but the number of infringed 'works.'" *UMG Recordings, Inc. v. MP3.Com. Inc.*, 109 F.Supp.2d 223, 225 (S.D.N.Y.2000).

70. A musical composition captures an artist's music in written form and a musical composition's copyright protects the generic sound that would necessarily result from any performance of the piece. *Newton v. Diamond*, 204 F. Supp. 2d 1244, 1249 (C.D. Cal. 2002), aff'd, 349 F.3d 591 (9th Cir. 2003), *opinion amended and superseded on denial of reh'g*, 388 F.3d 1189 (9th Cir. 2004), *and aff'd*, 388 F.3d 1189 (9th Cir. 2004).

71. By contrast, "[a] sound recording is the sound produced by the performer's rendition of the musical work." *Id*.

72. "Sound recordings are defined in section 101 as a species of derivative work of the underlying musical composition, and, as such, both fall within the one work, one award rule for statutory damages that only award for infringement of both works, and regardless of whether there are different owners." *Patry on Copyright* § 22:186.

73. Patry's analysis follows the plain language of the statute stating: "all the parts of a compilation or derivative work constitute one work." 17 U.S.C. § 504(c)(1).; *Christian Music Grp., Inc. v. MP3Tunes, LLC*, 844 F.3d 79, 95 (2d Cir. 2016) ("District Court's decision to permit only one award of statutory damages for the musical composition and corresponding sound recording comports with both the plain text and the legislative history of the Copyright Act. We therefore affirm that part of the judgment."); *Very Music Inc. v. Kid Glove Prods., Inc.,* No. EDCV124891JGBFFMX, 2016 WL 6674991, at *4 (C.D. Cal. Apr. 28, 2016).

74. Thus, based on the plain statutory language doubling the statutory award for a musical composition and the derivative sound recording is not permitted.

75. An infringement is considered innocent when the defendant has proved both of the following elements by a preponderance of the evidence: 1. Vail was not aware that its acts constituted infringement of the asserted copyrights and 2. Vail had no reason to believe that its acts constituted an infringement of the asserted copyrights. 17 U.S.C. § 504(c)(2).

76. If infringement is shown to be innocent, then the Copyright Act grants discretion to the court to lower the statutory damages award to $200 per violation. 17 U.S.C. § 504(c)(2).

77. An infringement is considered willful when the plaintiff has proven both of the following elements by a preponderance of the evidence: 1. the defendant engaged in acts that infringed the copyright; and 2. the defendant knew that those acts infringed the copyright, or the defendant acted with reckless disregard for, or willful blindness to, the copyright holder's rights. 17 U.S.C. § 504(c)(2); *In re Barboza*, 545 F.3d 702, 707 (9th Cir. 2008); *Wash. Shoe Co. v. A-Z Sporting Goods Inc.*, 704 F.3d 668, 674 (9th Cir. 2012).

78. If infringement is shown to be willful, the Copyright Act grants discretion to the court to increase damages up to $150,000 per violation. 17 U.S.C. § 504(c)(2).

79. Because Vail was unaware of any infringing actions and it had no reason to believe that its actions constituted copyright infringement, the evidence shows that to the extent there was any infringement, it was innocent infringement.

80. In measuring the damages, the court is to be guided by "what is just in the particular case, considering the nature of the copyright, the circumstances of the infringement and the like, ... but with the express qualification that in every case the assessment must be within the prescribed [maximum or minimum]. Within these limitations the court's discretion and sense of justice are controlling...." *F.W. Woolworth Co. v. Contemporary Arts, Inc.*, 344 U.S. 228, 232 (1952) (*quoting L.A. Westermann Co. v. Dispatch Printing Co.*, 249 U.S. 100, 106–07 (1919)).

81. "Statutory damages are intended to serve as a deterrent to defendants, not a windfall to the plaintiff…. As a result, in calculating statutory damages, courts will often anchor statutory damages to an estimate of actual damages." *Michaels v. Nohr*, No. CV1506353ABJEMX, 2015 WL 12532177, at *9 (C.D. Cal. Dec. 17, 2015).

82. Courts often consider estimated licensing fees in their awards of statutory damages. *See Broad. Music, Inc. v. CMPG Friends, Inc.*, No. EDCV1301649VAPSPX, 2014 WL 12558841 (C.D. Cal. Apr. 25, 2014); *Botts v. Kompany.com*, No. SACV0900195JVSANX, 2013 WL 12137690 (C.D. Cal. Apr. 10, 2013).

83. Based on the estimated licensing fees shown by APM's actual license, Vail's actual licenses, and competitive rates, the lower bound of the statutory damages range ($750 per copyright) already yields a windfall that is disfavored by law.

84. Accordingly, the maximum statutory damages should be $36,750 for the 49 Recordings, which is $750 per Recording.

85. APM has not shown that Vail's conduct was willful.

86. Vail has demonstrated that its conduct was innocent.

87. Accordingly, if infringement is shown, because it was innocent, the statutory damages are lowered to $9,800 for the 49 Recordings, which is $200 per Recording.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES